IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TARA D. SALLEE, as Administratrix of the )
Estate of her sister, LATONYA JOYCE )
SALLEE, deceased, and TARA D. SALLEE, )
as Administratrix and next fried of GT, the )
minor child of LaTonya Joyce Sallee, deceased )
and MARY COLEMAN, as Administratrix of )
the Estate of DERRICK SAGERS, deceased )
and MARY COLEMAN, personal )
representative and next friend of KNS, the )
minor child of Derrick Sagers, deceased, )
)
Plaintiffs, )
)
v. )
)
FORD MOTOR COMPANY; )
BRIDGESTONE AMERICAS, INC.; )
BRIDGESTONE AMERICAS TIRE )
OPERATIONS, LLC d/b/a FIRESTONE; )
WOODMERE MOTORS, INC.; M&D )
AUTOMOTIVE INCORPORATED; et al. )
)
Defendants. )
)

Case Number: CV-

**BRIDGESTONE AMERICAS, INC.'S AND BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC'S SECOND NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1442, 1441(a) and (b), and 1446, Defendants Bridgestone Americas, Inc. and Bridgestone Americas Tire Operations, LLC (hereinafter referred to collectively as the "Bridgestone Americas Defendants") give notice of their removal of this action from the Circuit Court of Montgomery County, Alabama, where it is now pending, to the United States District Court for the Middle District of Alabama, Northern Division. As addressed below, diversity jurisdiction exists in this action. *See* 28 U.S.C. § 1332(a). The Bridgestone Americas Defendants state the following as grounds for this removal:

## FACTUAL AND PROCEDURAL BACKGROUND

1.      Tara D. Sallee, as Administratrix of the Estate of her sister, LaTonya Joyce Sallee, deceased, and Tara D. Sallee, as Administratrix and next fried of GT, the minor child of LaTonya Joyce Sallee, deceased and Mary Coleman, as Administratrix of the Estate of Derrick Sagers, deceased, and personal representative and next friend of KNS, the minor child of Derrick Sagers, deceased (hereinafter referred to collectively as "Plaintiffs") initiated this action on November 12, 2012, by filing a Complaint in the Circuit Court of Montgomery County, Alabama, against the Bridgestone Americas Defendants and defendants Ford Motor Company ("Ford" hereinafter), Woodmere Motors, Inc. ("Woodmere" hereinafter), and M&D Automotive, Inc. ("M&D" hereinafter).

2.      The state court action is Civil Action No. 2012-901515. The Circuit Court of Montgomery County, Alabama is a state court within this judicial district. The Plaintiffs' Complaint, as well as a copy. of the entire state court file, including "a copy of all process, pleadings, and orders" served upon the Bridgestone Americas Defendants (28 U.S.C. § 1446(a)) is attached as Exhibit A.

3.      On or about October 10, 2013, Plaintiffs filed a Motion to Amend their complaint to identify Ed Parrish Jr. ("Parish" hereinafter) as the Administrator of the Estate of Derrick Sagers, deceased, and personal representative and next friend of KNS, the minor child of Derrick Sagers, deceased.[1]   *See* Ex. A, Motion to Amend Complaint.   The Motion was granted on October 23, 2013. *See* Ex. A, Order, October 23, 2013.

4.      According to the Amended Complaint, Plaintiffs' claims arise out of a single-vehicle accident ("the Subject Accident" hereinafter), which allegedly occurred in Georgia and

---

[1] Plaintiffs did not file a motion to substitute Parrish for Mary Coleman as the party plaintiff under Ala. R. Civ. P. 25.

resulted in the deaths of LaTonya Sallee and Derrick Sagers. *See* Ex. C, Amended Compl. Plaintiffs contend that these injuries arose as a result of the negligence and misconduct of defendants, as well as the unsafe and unreasonably dangerous condition of the Subject Vehicle and Subject Tire. *See* Ex. C, Amended Compl., ¶ 115. The Bridgestone Americas Defendants deny Plaintiffs' allegations.

5.      The Bridgestone Americas Defendants and Ford were served with process in this action on November 14, 2012. *See* Ex. A, Return of Service.

6.      The Bridgestone Americas Defendants removed this case to the District Court for the Middle District of Alabama, Northern Division on December 14, 2012 (the "First Removal"), asserting that the Court had jurisdiction under the provisions of 28 U.S.C. § 1332, and that the suit was an action that may be removed under the provisions of 28 U.S.C. § 1441, because there existed complete diversity of citizenship between Plaintiffs and all *properly joined* defendants in the underlying cause and the amount in controversy exceeded $75,000, exclusive of interest and costs. Ford consented to and joined in the Notice of Removal. At the time of the First Removal, defendants Woodmere and M&D had not been served. The federal court action was Case No. 2:12-CV-1086.

7.      In the First Removal, the Bridgestone Americas Defendants argued that non-diverse defendants Woodmere and M&D were fraudulently joined. The Bridgestone Americas Defendants argued that Plaintiffs could not allege a cause of action against Woodmere because Woodmere was a dissolved corporation. The Bridgestone Americas Defendants argued that M&D had to have been fraudulently joined because M&D was owned by Mary Coleman and her husband, David Coleman, and thus there was clearly no intent by the Plaintiffs to recover against M&D. In addition, the Bridgestone Americas Defendants argued that M&D could not have

installed the Subject Tire, because M&D was not in existence at the time the Subject Tire was installed in June or July 2011.

8.    Plaintiffs filed a Motion to Remand on January 11, 2013.

9.    On January 22, 2013, Plaintiffs also filed an Emergency Motion to Stay All Discovery, as well as a Motion to Quash Depositions. This Court granted the Emergency Motion on January 23, 2013, staying all discovery and preventing the Defendants from engaging in jurisdictional discovery.

10.    On June 27, 2013, the Court remanded the case to the Circuit Court of Montgomery County, holding that the Bridgestone Americas Defendants' argument as to Woodmere failed, because the Bridgestone Americas Defendants had not shown that Woodmere published a notice of dissolution, which would bar unknown claims against it not brought within two years of the notice, under Ala. Code § 10A-1-9.22, or that Woodmere gave Plaintiffs written notice of its dissolution, which would bar known claims against it not brought within a specified time, under Ala. Code § 10A-1-9.21. *See* Memorandum Opinion and Order, p. 6-7, Exhibit D. In remanding the case, the Court never reached the issue as to whether M&D had been fraudulently joined. *See id.* at p. 7. The Court, however, noted the questionable circumstances surrounding Mary Coleman's involvement with M&D and recognized the possibility that this case would return to federal court. *Id.* at pp. 8-9.

11.    A defendant may remove a previously remanded case where there is a new and different basis for removal. *See TKI, Inc. v. Nichols Res. Corp.*, 191 F.Supp.2d 1307, 1312-13 (M.D. Ala. 2002). The Bridgestone Americas Defendants are filing this second Notice of Removal on the ground that Woodmere has been fraudulently joined because, regardless of whether it has been dissolved or provided notice of dissolution, Woodmere was a wholesaler at

4

the time it owned and sold the Subject Vehicle and neither made any inspection of the Subject Vehicle nor gave any warranties at the time of sale, and thus Woodmere cannot be held liable. *See* Affidavit of John F. Fitzgerald, ¶¶ 4-16, Exhibit E. Also, since this Court previously did not address whether M&D is a fraudulently joined defendant that argument remains a basis for removal.[2]

### GROUNDS FOR SECOND REMOVAL

12.    This action is properly removable under 28 U.S.C. § 1441(a) because this Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship among the Plaintiffs on the one hand and the Bridgestone Americas Defendants and Ford on the other hand, while the other parties are improperly joined. The amount in controversy exceeds $75,000, exclusive of interest and costs.

**A.    There is Complete Diversity of Citizenship Between the Parties.**

13.    Upon information and belief, LaTonya Joyce Sallee ("Sallee" hereinafter), decedent, was a citizen of the State of Alabama at the time of her death. *See* Accident Report, p. 2, Exhibit F; Tara Sallee Petition for Letters of Administration, Exhibit G; *see also James v. Three Notch Med. Ctr.*, 966 F. Supp. 1112, 1116 (M.D. Ala. 1997) (observing that citizenship of decedent controls in wrongful death diversity actions). Allegedly, Sallee died as a result of the Subject Accident on or about July 2, 2011. *See* Ex. C, Amended Compl. ¶¶ 12, 14, 20. Similarly, GT, the purported minor child of Sallee, deceased, is a citizen of the State of Alabama. *See* Ex. G, Tara Sallee Petition for Letters of Administration.

14.    Upon information and belief, Derrick Sagers ("Sagers" hereinafter), decedent, was a citizen of the State of Alabama at the time of his death. *See* Ex. F, Accident Report, pp. 1-

---

[2] The Bridgestone Americas Defendants request the opportunity to engage in jurisdictional discovery should the Court find the facts are not sufficient to support this Court's jurisdiction.

2; Mary Coleman Petition for Letters of Administration, Exhibit H. Allegedly, Sagers died as a result of the subject accident. *See* Ex. C, Amended Compl. ¶¶ 12, 14, 20. Similarly, KNS, the purported minor child of Derrick Sagers, deceased, is a citizen of the State of Alabama. *See* Ex. H, Mary Coleman Petition for Letters of Administration.

15. Defendant Ford is not an Alabama corporation. *See* Ex. C, Amended Compl. ¶ 3. Ford is, and at the time of filing of this action was, a corporation existing under the laws of the State of Delaware, having its headquarters in the State of Michigan. Ford is thus a citizen of both Delaware and Michigan under 28 U.S.C. § 1332(c)(1). *See Hertz Corp v. Friend*, 130 S. Ct. 1181, 1192 (2010).

16. Likewise, Defendant Bridgestone Americas, Inc. is not an Alabama Corporation. *See* Ex. C, Amended Compl. ¶ 4. Bridgestone Americas, Inc., is, and at the time of the filing of this action was, a corporation existing under the laws of the State of Nevada, having its principal place of business in the State of Tennessee. Bridgestone Americas, Inc. is thus a citizen of both Nevada and Tennessee under 28 U.S.C. § 1332(c)(1). *See Hertz Corp.*, 130 S. Ct. at 1192.

17. Similarly, Defendant Bridgestone Americas Tire Operations, LLC ("BATO" hereinafter) is not an Alabama corporation. *See* Ex. C, Amended Compl. ¶ 5. BATO is, and at the time of the filing of this action was, a limited liability company. BATO's sole member is Bridgestone Americas Holding, Inc., which is a Nevada corporation, with its principal place of business in Tennessee. BATO is thus a citizen of both Nevada and Tennessee under 28 U.S.C. § 1332(c)(1). *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (holding that an LLC's citizenship is determined by the citizenship of its members).

18.    As discussed *infra* Defendants Woodmere and M&D have been fraudulently joined, thus rendering their citizenship for purposes of diversity irrelevant. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."). Therefore, there is complete diversity among all properly joined Defendants and the Plaintiffs.

19.    An action may be removable even if there is a complete lack of diversity on the face of the pleadings, if the joinder of the non-diverse party is fraudulent. *Triggs*, 154 F.3d at 1287; *Legg v. Wyeth*, 428 F.3d 1317, 1320-21 (11th Cir. 2005).  Fraudulent joinder may be established in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse defendant); or, (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; or, (3) where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. *Triggs*, 154 F.3d at 1287.  As to the first test, fraudulent joinder will be found where the "defendant shows that 'there is no possibility the plaintiff can establish a cause of action against the resident defendant.'" *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007) (quoting *Henderson v. Washington Nat. Ins. Co.*, 454 F.2d 1278, 1281 (11th Cir. 2006)). "[T]he possibility of liability on the part of the allegedly fraudulently joined defendant must be reasonable, not merely theoretical and in considering possible state law claims, possible must mean more than such a possibility that a designated residence can be hit by a meteor tonight." *Bloodsworth v. Smith & Nephew*, No. 2:05CV622-D, 2005 WL 3470337, at *4 (M.D. Ala. 2005) (citing *Legg v. Wyeth*, 428 F.3d 1317, 1325 n. 5 (11th Cir. 2005)).  In determining whether a resident defendant has been fraudulently joined, the court must look to "the plaintiff's pleadings

at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Parez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "[T]he proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)[.]" *Crowe v. Coleman*, 113 F.3d 1536, 1537 (11th Cir. 1997) (citing *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 n.9 (5th Cir. Unit A 1981)). If the defendant makes this showing, the federal court must dismiss the non-diverse defendant and deny any motion to remand. *Florence*, 484 F.3d at 1297. Here, based on the facts currently before the Court, there is no possibility that Plaintiffs can state any cause of action against either M&D or Woodmere.

    i.   M&D Is Fraudulently Joined.

    20.    Defendant M&D has been fraudulently joined. Notwithstanding the allegations in Plaintiffs' Amended Complaint, no entity by the name of M&D could have serviced the Subject Vehicle involved in the Subject Accident in June or July 2011, because no such entity existed or was in operation at that time. For that reason, there is no possibility that Plaintiffs can state a cause of action against M&D based on the facts before the Court, and the conclusion must be reached that M&D is a sham defendant.[3]

    21.    Moreover, Mary Coleman's intimate relationship with M&D dictates the conclusion that M&D was only added as a defendant in this case to defeat this Court's jurisdiction. Mary Coleman is the mother of Sagers. *See* Ex. H, Mary Coleman Petition for Letters of Administration. Mary Coleman, formerly known as Mary Sanders, is married to David Coleman. *See* Marriage Certificate, Exhibit I. Mary Coleman and David Coleman are the

---

[3] Ironically but not surprisingly, Mary Coleman concedes **there were no witnesses** to the work allegedly and supposedly done by M&D. *See* Plaintiff Mary Coleman's Responses to Defendant Bridgestone Americas Tire Operations, LLC's Interrogatories, No. 3, Exhibit II (emphasis added).

incorporators of M&D Automotive, Inc. *See* Certificate of Incorporation of M&D Automotive, Inc., p. 1, Exhibit J; Secretary of State Business Details, Exhibit K. Mary Coleman is also the registered agent for M&D. *See* Ex. J, Certificate of Incorporation, p. 1; Ex. K, Secretary of State Business Details. Thus, Mary Coleman and her son's estate are essentially suing her own company. At first, Mary Coleman attempted to serve the summons in this case on her husband, David Coleman, via certified mail to 1327 N. Ripley Street, Montgomery, Alabama. *See* Summons to M&D, David Coleman, Exhibit L. David Coleman did not accept service, however, and the envelope was returned to the sender as undeliverable because the *business was closed forever*. *See* Return Receipt, David Coleman, Exhibit M. After the case was remanded, Mary Coleman served herself as the registered agent for M&D. *See* Summons to M&D, Mary Coleman, Exhibit N.

22.     The same day that Mary Coleman accepted service on behalf of M&D, Parish petitioned the Probate Court of Elmore County for the removal of Mary Coleman as administratrix of Sagers' estate and the appointment of himself as successor. *See* Parish Petition for Removal of Administratrix of Estate and Request for Appointment As Successor, p. 1, Exhibit O. In the Petition, Parrish stated that Mary Coleman seeks to step down as administratrix because a "conflict has arisen." *Id.* On September 27, 2013, the Probate Court of Elmore County, Alabama granted the petition. *See* Probate Court Order, Exhibit P.

23.     This "conflict" is the fact that Mary Coleman is the registered agent and owner of the very company, M&D, that she is suing on behalf of her son's estate. Recognizing that such a "conflict" exists, Mary Coleman has also purportedly switched attorneys. According to Mr. Boone, his firm no longer represents Mary Coleman. *See* E-mail, Exhibit Q. Rather, Mary Coleman and David Coleman are now represented by M&D's counsel, Mr. Wesley Pitters. *Id.*

24.     The fact that Mr. Boone's firm no longer represents Mary Coleman, however, does not resolve the "conflict" that arises as a result of Mary Coleman suing her own company. Rather, this change in representation only bolsters the argument that the presence of M&D in this action is to defeat jurisdiction. It is axiomatic under the Alabama Rules of Professional Conduct, conflict of interest rules, that Mr. Boone cannot assist his current clients (Sallee and Parrish) in seeking a recovery against a former client (Mary Coleman) **in the same action**. Rule 1.9, Ala. R. Prof. Cond.

25.     Additionally, the involvement of Gregory Coleman, who is David Coleman's brother, with Plaintiffs also highlights the sham being carried out by Plaintiffs. In the First Removal proceedings, Gregory Coleman submitted an affidavit to the Plaintiffs in support of their Motion to Remand in order to assist the Plaintiffs in establishing a claim against M&D. It is curious, indeed, that David Coleman's brother would work with Plaintiffs to submit an affidavit directly adverse to the interests of M&D, David Coleman's company.[4]

26.     Furthermore, Plaintiffs refuse to state on the record that M&D is liable. On September 13, 2013, the Bridgestone Americas Defendants served upon Plaintiffs Second Requests for Admission, which were aimed at determining if Plaintiffs still contend M&D is liable, what duties Plaintiffs contend were breached, and the knowledge Plaintiffs contend M&D should have had, as well as other factors relating to M&D's liability. *See* Second Requests for Admission, Nos. 1-30, Exhibit R. Plaintiffs initially refused to respond, asserting that they had not received the requests for admission. *See* Motion to Strike and for Sanctions, ¶¶ 1-3, Exhibit S. This assertion by Plaintiffs' counsel was quite odd given the fact that the Second Requests for

---

[4] What makes it even more curious that he would aid the Plaintiffs is the additional evidence that has come to light since that further shows Gregory Coleman's connection to M&D. The Bridgestone Americas Defendants have recently been informed by counsel for Plaintiffs and M&D that Mr. Pitters now represents Gregory Coleman in connection with Mr. Pitters' representation of M&D.

Admission were hand delivered upon counsel for Plaintiffs and referenced in filings with the court. *See* Defendant's Response to Plaintiffs' Motion to Strike Defendant BATO's Admitted Requests for Admission and for Sanctions, ¶¶ 1-4, Exhibit T. Nevertheless, BATO allotted Plaintiffs additional time to respond to said discovery. *See id.* at ¶ 7. BATO, however, made it clear to Plaintiffs that anything short of unconditional admissions to these requests would further prove that M&D is a sham defendant. *See id.* at ¶ 9. Nevertheless, notwithstanding BATO's admonition, Plaintiffs' responses still fall well short of unconditional admissions. Indeed, Plaintiffs' substantive responses simply state that "it is" Plaintiffs' contention that "a jury could hold M&D jointly and severally liable for the claims alleged against it." *See* Responses to Second Requests for Admission, Nos. 1-30, Exhibit U. Moreover, Plaintiffs' responses attempt to hide behind a veil of "joint and several liability," *id.*, even though the tort law claims are governed by Georgia law, which abolished joint and several liability. Ga. Code Ann. § 51-12-33; *Couch v. Red Roof Inns, Inc.*, 729 S.E.2d 378, 384 (Ga. 2012). The fact that Plaintiffs refuse to state on the record any contention that M&D is liable proves that M&D was only added as a defendant to defeat jurisdiction. Presumably, the plan is to wait until after the one-year removal period and then dismiss M&D from the case actually or effectively.

27. That M&D is nothing more than a sham defendant is further supported by the evidence regarding M&D as a corporate entity. The Subject Tire was allegedly installed by M&D on the Subject Vehicle within days of the Subject Accident, which occurred on July 2, 2011. *See* Ex. C, Amended Compl., ¶¶ 12-13. There is nothing tending to show that M&D was in existence during that time. It is true that M&D registered with the Alabama Secretary of State and filed articles of incorporation in 2001. *See* Ex. J, Certificate of Incorporation of M&D. However, that fact is not dispositive as to whether M&D existed in June or July of 2011, and the

11

evidence indicates otherwise. There is no record of M&D conducting any business in Montgomery, or anywhere else, in 2011. *See* Affidavit of Mitchell W. Spitler ¶ 4, Exhibit V. M&D has not filed any annual report or other corporate document with the Alabama Secretary of State since 2001. *Id.* at ¶ 4. M&D is not a corporation in good standing in Alabama. *See* State of Alabama Department of Revenue Request Denial, Exhibit W. M&D has not been issued a business license in the cities of Montgomery or Wetumpka or in Elmore or Montgomery County. *See* Ex. V, Spitler Aff., ¶¶ 5, 8, City of Montgomery Letter, City of Wetumpka Letter, Elmore County Letter, attached thereto. M&D has not filed any records with the Montgomery County Probate Office. *See id.* at ¶ 6. Moreover, there is no public telephone listing for M&D. *Id.* at ¶ 9. M&D therefore did not carry out any of the actions typically undertaken by an existing entity during the relevant time period. In fact, the only evidence Plaintiffs provided as to M&D in support of its prior Motion to Remand was an affidavit from David Hale (which as unsubstantiated), Gregory Coleman (which as discussed above is suspect), and Grady Hicks (which was later controverted by a second Hicks' affidavit).

28. There is no documentary evidence tending to show that M&D was in existence in June or July 2011. For instance, there is no evidence of any invoice, receipt, bill, inventory form, purchase order form, tax documents, or other similar documentary evidence that would prove M&D was in existence in June or July 2011. Relatedly, on September 13, 2013, the Bridgestone Americas Defendants served Defendant's Requests for Admission to M&D Automotive, Inc. *See* Defendant's Requests for Admission to M&D Automotive, Inc., Exhibit X. Under Ala. R. Civ. P. 36, responses to the Requests for Admission were due October 16, 2013. M&D has not responded. Therefore, under Ala. R. Civ. P. 36, the following admissions are deemed admitted: M&D did not file an Alabama Business Tax Return and Annual report in

12

2010, 2011, 2012, or 2013; M&D did not issue a W-2 to any person in 2010, 2011, 2012, or 2013; M&D did not issue a 1099 to any person in 2009, 2010, 2011, 2012, or 2013; M&D did not use any account housed at any financial institution for the payment of expenses or deposit of funds in connection with the operation of M&D at any time in 2010, 2011, 2012, or 2013; no county or city issued M&D a business license in 2011, 2012, or 2013; and, M&D did not file any income tax returns for 2011 or 2012. *See id.* at ¶¶ 1-27. These admissions are direct evidence that M&D was not an existing entity in June or July 2011.

29.    An Affidavit executed by David Coleman on October 4, 2010, in connection with a child support proceeding, further supports the conclusion that M&D is a sham defendant. In October 2010, a time during which Plaintiffs contend M&D was an existing entity, David Coleman executed an affidavit stating that he was not currently employed and was not receiving any employment income. *See* Affidavit of David Coleman, Exhibit Y. If M&D was, in fact, a going concern during that time, its incorporator, David Coleman, would certainly be employed and receiving some income from his business. The fact that he was neither employed nor receiving any income further proves that M&D is nothing more than a sham defendant. Additionally, David Coleman never supplemented his affidavit or filed any additional pleadings in that matter to advise the court of any income or employment with M&D in 2011.

30.    Finally, the fact that Plaintiffs and M&D have engaged in conduct aimed at frustrating the efforts of the Bridgestone Americas Defendants to carry out legitimate discovery further bolsters the conclusion that M&D is a sham defendant. For instance, M&D has refused to respond to any written discovery propounded by the Bridgestone Americas Defendants.

31.    In addition, both Plaintiffs and M&D have delayed and prevented the Bridgestone Americas Defendants from taking the depositions of Mary Coleman, M&D, David Coleman,

David Hale, and Gregory Coleman. They have done this to prevent the Bridgestone Americas Defendants from uncovering information which would further show that M&D is a sham defendant. Since this case was remanded, the Bridgestone Americas Defendants have noticed the depositions of M&D, Mary Coleman, and David Coleman three times and the depositions of David Hale and Gregory Coleman[5] twice. *See* Ex. Z, Notice to Take Deposition of Mary Coleman, Notice to Take Deposition of David Coleman, Notice to Take 30(b)(5)&(6) Deposition of M&D Automotive, Inc., Re-Notice to Take Deposition of Mary Coleman, Re-Notice to Take Deposition of David Coleman, Re-Notice to Take 30(b)(5)&(6) Deposition of M&D Automotive Inc., Notice to Take Deposition of David Hale, Notice to Take Deposition of Gregory Coleman, Amended Re-Notice to Take Deposition of Mary Coleman and Requests for Production Pursuant to 30(b)(5), Amended Re-Notice to Take 30(b)(5)&(6) Deposition of M&D Automotive, Inc., Second Amended Re-Notice to Take Deposition of Mary Coleman and Requests for Production Pursuant to Rule 30(b)(5), Second Re-Notice to Take Deposition of David Coleman, Second Amended Re-Notice to Take 30(b)(5)&(6) Deposition of M&D Automotive, Inc., Re-Notice to Take Deposition of Gregory Coleman, Re-Notice to Take Deposition of David Hale. However, the Bridgestone Americas Defendants still have not had the opportunity to take any of these depositions as a result of the conduct of Plaintiffs and M&D. *See* Ex. AA, Response to M&D's Motion to Reconsider Court's Order Denying Motion to Quash Notice of Deposition.

32. The Bridgestone Americas Defendants made clear to all parties that these depositions needed to be taken no later than October 30, 2013. *See* Letter, attached hereto as Exhibit BB. Despite that fact, counsel for Plaintiffs and M&D have thwarted the Bridgestone Americas Defendants' attempts to take these depositions at every turn. The most egregious of

---

[5] Both David Hale and Gregory Coleman submitted affidavits to Plaintiffs in support of Plaintiffs Motion to Remand and Plaintiffs' Reply to BATO's Response to Plaintiffs' Motion to Remand in connection with the First Removal.

these actions occurred when Mary Coleman, Gregory Coleman, and counsel for M&D did not even bother to attend the most recently scheduled depositions on October 22, 2013. Moreover, it was not until this time that counsel for Plaintiffs first informed the parties that he no longer represented Mary Coleman and that she supposedly was now represented by counsel for M&D. The only conclusion that can be reached from M&D's and Plaintiffs' actions is that they are attempting to avoid jurisdiction-related discovery until after the one year removal deadline has passed.

33.     There is not a single scintilla of evidence to prove M&D was operating in June or July 2011, or that it serviced the Subject Vehicle as alleged in the Amended Complaint. The "weakness" of Plaintiffs' claims, and the lack of credible evidence, weighs in favor of a finding that Plaintiffs have named M&D as a defendant in this action only to defeat federal jurisdiction and that M&D was fraudulently joined.

ii.  Woodmere Is Fraudulently Joined.

34.     Additionally, Defendant Woodmere has been fraudulently joined. Plaintiffs' Amended Complaint asserts the following claims against Woodmere: (1) breach of warranty; (2) negligence and wantonness; and, (3) strict liability.  *See* Ex. C, Amended Compl. Notwithstanding these allegations, based on the facts as alleged in Plaintiffs' Amended Complaint and as set forth in the Affidavit of Fitzgerald, there is no possibility that Plaintiffs can establish a cause of action against Woodmere.

35.     The accident at issue occurred in Georgia, *see* Ex. C, Amended Compl., ¶ 14, and thus, Georgia law governs the Plaintiffs' tort claims, which include strict liability, negligence, and wantonness, because Georgia is the place of the injury.[6] *See Fitts v. Minn. Min. & Mfg. Co.,*

---

[6] Although Georgia law governs Plaintiffs' tort claims, those claims also would appear to be barred under Alabama law by Ala. Code. § 6-5-501(2)(a) under Alabama law.

581 So. 2d 819, 820 (Ala. 1991). As to the contract claims, which include breach of warranty, Alabama law governs because it is the place where the transaction (namely, the sale of the vehicle to Sagers) occurred. *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991).

36.     On October 1, 2013, Fitzgerald, the former President of Woodmere, provided an affidavit which states that Woodmere was a wholesaler at the time it purchased, owned and subsequently transferred the subject vehicle to Fitzgerald's son-in-law Stephen Gandy. *See* Ex. E, Fitzgerald Aff., ¶¶ 1, 2, 4, 12. In that affidavit, Fitzgerald further states that Woodmere did not have the facilities necessary to perform any inspections or repairs on any vehicles. *Id.* at ¶ 8-9. Rather, Woodmere was simply a wholesaler, which purchased used vehicles for resale to used car retailers. *Id.* at ¶¶ 4-7. Woodmere was not in the business of selling vehicles to the consumer public. *Id.* at ¶ 5. In fact, Woodmere did not even sell the subject vehicle to Sagers. *Id.* at ¶ 16.

37.     Under Georgia law, a wholesaler of used vehicles, such as Woodmere, cannot be held liable under a theory of strict liability. Ga. Code Ann. § 51-1-11(b)(1) provides that

> [t]he manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

Ga. Code Ann. § 51-1-11(b)(1). Pursuant to section § 51-1-11(b)(1), a claim for strict liability is limited to manufacturers of a product and to products which are sold as new. *See e.g. Ryals v. Billy Poppell, Inc.*, 386 S.E.2d 513, 514 (Ga. Ct. App. 1989) (holding that because the vehicle was not manufactured by the used car sales business, there was no liability under § 51-1-11);

*Mullins v. MGD Graphics Sys. Grp.*, 867 F. Supp. 1578, 1583 (N.D. Ga. 1994) (holding that seller of used product was not liable under § 51-1-11 because it was neither a manufacturer nor selling new property). Here, it is undisputed that Woodmere did not manufacture the Subject Tire or Vehicle and the Subject Tire and Vehicle were not new when they were purchased by Sagers. Ex. E, Fitzgerald Aff., ¶¶ 4, 6, 7, 13; Ex. C, Amended Compl., ¶ 13. Thus, there is no possibility that Plaintiffs can establish a cause of action against Woodmere for strict liability.

38.     Similarly, there is no possibility Woodmere can be held liable under a cause of action for negligence or wantonness, because Woodmere did not owe any duty to Sagers or Sallee to warn or to inspect.  The crux of Plaintiffs' negligence claims is that Woodmere was "negligent and wanton in exercising due care in providing a reasonably (sic) inspection, repair, and maintenance and placing said tire on the vehicle and failing to warn of known hazards associated with operating a vehicle with a tire that was approximately 17 years old," and that Woodmere breached its duty to warn. *See* Ex. C, Amended Compl., ¶¶ 63, 67.

39.     Woodmere, however, did not sell the subject vehicle to Sagers or Sallee. Ex. E, Fitzgerald Aff., ¶ 16. Additionally, Woodmere was not in the business of selling vehicles to the consuming public. *Id.* at ¶ 5. Rather, Woodmere was a used automobile wholesaler, who, in the course of its business, acquired and re-sold automobiles to automobile dealerships at a wholesale value price. *Id.* at ¶¶ 4-7. As an automobile wholesaler, Woodmere owed no duty to Sagers or Sallee. *See Wilcher v. Redding Swainsboro Ford Lincoln Mercury, Inc.*, 743 S.E.2d 27, 30-31 (Ga. Ct. App. 2013) (holding that, a remote wholesaler owes no duty to a third party consumer purchaser to whom it did not sell the vehicle). Woodmere transferred title to the vehicle to Stephen Gandy, his son-in-law, "as is" with no warranties and did not retain any control or obligation with respect to the Subject Vehicle's future disposal. Ex. E, Fitzgerald Aff., ¶¶ 12, 15.

17

Therefore, Woodmere, as a remote automobile wholesaler which sold the vehicle to an intervening party (Gandy), owed no duty to Sagers or Salle, as Sagers was a third party consumer purchaser. *See Wilcher*, 743 S.E.2d at 30.

40. Alternatively, even if the Court finds that Woodmere was not a wholesaler, which owed no duty to a third party, Woodmere still cannot be held liable. Based on the facts as alleged in Plaintiffs' Amended Complaint and as set forth in Fitzgerald's Affidavit, Woodmere had no duty to inspect the Subject Vehicle or to warn of any defect or dangerous condition. *See Thorpe v. Sterling Equip. Co. Inc.*, 729 S.E.2d 52, 55-57 (Ga. Ct. App. 2012); *Wilcher*, 743 S.E.2d at 30; *Parks v. Hyundai Motor Am.*, 575 S.E.2d 673, 675 (Ga. Ct. App. 2002); *Ryals*, 386 S.E.2d at 514. Woodmere undisputedly did not undertake any inspection of the Subject Vehicle, or any part thereof. Ex. E, Fitzgerald Aff., ¶ 13. Moreover, it is undisputed that Woodmere did not have any knowledge, actual or constructive, of any defect or dangerous condition in the Subject Vehicle or Subject Tire. *See id.* at ¶¶ 10, 11, 13, 14. Therefore, there is no possibility that Plaintiffs may maintain any cause of action for negligence or wantonness against Woodmere.

41. Finally, based on the facts currently before the Court, there is no possibility that Plaintiffs can state a cause of action against Woodmere for either express or implied breach of warranty. First, Woodmere may not be held liable for breach of express warranty. The Subject Vehicle was transferred to Gandy "as is," and no one acting for or on behalf of Woodmere made any warranties to Gandy. *See id.* at ¶ 15. Alternatively, if the transfer of the vehicle to Gandy by Woodmere was a gift, then there is no "sale" for which a claim for breach of warranty can attach. *See* Ala. Code §§ 7-2-102 ("this article applies to transactions in goods."), 7-2-313, 7-2-314, 7-2-315; *cf. Cain v. Sheraton Perimeter Park South Hotel*, 592 So.2d 218, 222 (Ala. 1991)

(determining whether a "sale" occurred in order to determine if there was an implied warranty of merchantability). A "'sale' consists of the passing of title from the seller to the buyer for a price." Ala. Code § 7-2-106. No sale occurred here. Gandy never paid any amount for the Subject Vehicle, and both parties considered the transfer to be a gift. Ex. E, Fitzgerald Aff., ¶ 12. Thus, because there was no "sale," there can be no claim for breach of warranty.

42.   With regard to breach of implied warranty, as a general rule, no implied warranties attach to the sale of used automobiles. *Bagley v. Creekside Motors, Inc.*, 913 So. 2d 441, 446 (Ala. 2005); *Osborn v. Custom Truck Sales & Serv.*, 562 So. 2d 243, 247 (Ala. 1990); *Roland v. Cooper*, 768 So. 2d 400, 406 (Ala. Ct. App. 2000). Therefore, any implied warranty claim against Woodmere, which sold a used automobile in the relevant transaction, would fail.

43.   Based on the facts as set out in Plaintiffs' Amended Complaint and the Affidavit of Fitzgerald, there is no possibility that Plaintiffs can state a cause of action against Woodmere for strict liability, negligence or wantonness, or breach of warranty. Therefore, this Court should find that Woodmere is fraudulently joined.

**B.    The Amount-In-Controversy Requirement is Satisfied.**

44.   Although the Amended Complaint does not demand a specific amount of damages, it is "facially apparent" from the pleading itself that the amount in controversy exceeds the $75,000 jurisdictional minimum. *Roe v. Michelin*, 613 F.3d 1058, 1061-62 (11th Cir. 2010). Plaintiffs demand, in their products liability action, punitive damages to punish Defendants for the deaths of Sallee and Sagers. *See e.g.*, Ex. C, Amended Compl. p. 24. In addition, Plaintiffs seek compensatory damages. *Id.* at p. 23. It is reasonable to conclude, based on "experience and common sense" that punishment for the deaths of two people and compensatory damages would

exceed $75,000. *See Roe*, 613 F.3d at 1062. Plaintiffs' failure to plead an ad damnum cannot prevent the Court "from acknowledging the value of the claim." *Id.* at 1064.

45.     Additionally, the conclusion that the amount in controversy exceeds $75,000 is further bolstered by Plaintiffs' specific allegations and the damages sought. Plaintiffs allege that "Derrick Sagers and LaTonya Sallee sustained severe bodily injury resulting in death" as a result of an accident involving the products of the Bridgestone Americas Defendants and Ford. Ex. C, Amended Compl., ¶ 20. As a result, Plaintiffs seek punitive and compensatory damages in an amount to be determined by a jury. *Id.* at pp. 23-24. Alabama juries in similar products liability cases routinely render verdicts in excess of $75,000, exclusive of interests and costs. *See Estate of Johnson v. Yanmar Co.*, No. 05-1141 (Mobile Co. Cir. Ct. 3/6/10) ($875,000 jury verdict for products liability claim involving a worker who was crushed by a tractor) (attached as Exhibit CC); *Estate of Shaffer v. Am. Lifts. Inc.*, No. 03-28 (Marion Co. Cir. Ct. 11/17/04) ($2.5 million jury verdict for products liability claim involving a worker who was crushed to death by a scissor lift) (attached as Exhibit DD); *see also Denton v. Daimler Chrysler Corp.*, No. 1:06-CV-02682 (N.D. Ga. 1/14/09) ($2,200,00 jury verdict for products liability claim involving a failed airbag) (attached as Exhibit EE); *Estate of Matthew J. Reynolds and Bonnie J. Reynolds v. G.M. Corp.*, No. 04-CV-001006 (N.D. Ga. 6/17/08) ($3,500,000 jury verdict after decedent as killed and plaintiff suffered injuries as a result of a vehicle accident allegedly caused by a vehicle stability problem) (attached as Exhibit FF). In addition, jury verdicts in products liability cases routinely exceed $75,000 in Alabama. *See* Chart of Alabama Verdicts in Products Liability Cases, Exhibit GG. Thus, it is evidence that the amount in controversy in the instant case exceeds $75,000 exclusive of interests and costs.

C.     **The Other Prerequisites for Removal Have Been Satisfied.**

20

46.     In addition to satisfying the requirements of diversity jurisdiction, the Bridgestone Americas Defendants have satisfied all other requirements for removal.

47.     In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders in the state court action is attached hereto collectively as Exhibit A.

48.     Removal to this district and division is proper under 28 U.S.C. § 81(a)(2) because this district and division embrace the Circuit Court of Montgomery County, Alabama, the forum in which the removed action was pending.

49.     In accordance with 28 U.S.C. § 1446(d), the Bridgestone Americas Defendants will promptly provide written notice of the filing of this Notice of Removal to the Plaintiffs and shall file a copy of this Notice along with a Notice of Filing of Notice of Removal with the Clerk of the Circuit Court of Montgomery County, Alabama, where this action is currently pending (Exhibit B).

50.     The consent of Ford Motor Company, Inc., is attached hereto as Exhibit HH.  The consent of the other defendants in this action is unnecessary because they have been fraudulently joined.  *Diaz v. Kaplan Univ.*, 567 F.Supp.2d 1394, 1402 (S.D. Fla. 2008) (citing *Triggs*, 154 F.3d at 1287).

51.     Finally, removal of this action is timely.  On October 1, 2013, Defendants received from John F. Fitzgerald, the director and president of Woodmere, an affidavit setting forth certain facts regarding the Subject Tire and Subject Vehicle. *See* Ex. E, Fitzgerald Aff. On October 10, 2013, Plaintiffs filed a Motion to Amend the Complaint, in which Plaintiffs identified Parrish as the Administrator of the Estate of Derrick Sagers, deceased, and as personal representative and next friend of KNS, the minor child of Derrick Sagers. *See* Ex. A, Motion to Amend the Complaint.  The court granted Plaintiffs Motion to Amend the Complaint on October

23, 2013.  *See* Ex. A, Order, October 23, 2013.  At no time prior to October 1, 2013, have the Bridgestone Americas Defendants received any paper bearing on the issue of removal.  This removal is timely under 28 U.S.C. § 1446(b) because Defendants filed this notice within 30 days of receipt by the Bridgestone Americas Defendants of "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  *See* 28 U.S.C. § 1446(b)(3).

WHEREFORE, the Bridgestone Americas Defendants pray this court will make any and all orders necessary to effect the removal of this action from the Circuit Court of Montgomery County, Alabama, and will prepare the true record of all proceedings that may have been had in the state court.

Kenneth M. Perry (ASB-4945-E67K)
kperry@babc.com
One of the Attorneys for
Defendants Bridgestone Americas, Inc. and
Bridgestone Americas Tire Operations, LLC

OF COUNSEL
Hope T. Cannon (ASB-5898-T55H)
Hillary L. Chinigo (ASB-5189-G82E)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
Email: hcannon@babc.com
Email: hchinigo@babc.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the above and foregoing on:

LaBarron N. Boone
Beasley, Allen, Crow, Methvin,
      Portis & Miles, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, AL 36103-4160

Terry P. Wilson
L. Bailey Jackson
Wilson & Jackson, LLC
1785 Taliaferro Trail
Montgomery, AL 36117

Karen Laneaux
The Law Offices of Sandra Lewis, P.C.
207 Montgomery Street, Suite 1010
Montgomery, AL 36104

John Issac Southerland
Jennifer H. Reid
Huie, Fernambucq & Stewart LLP
2801 Highway 280 South, Suite 200
Birmingham, Alabama 35223-2484

Amardo Wesley Pitters
A.Wesley Pitters, P.C.
1145 South Perry Street (36104)
Post Office Box 1973
Montgomery, Alabama 36102-1973

by placing a copy of the same in the United States Mail, first-class postage prepaid and addressed to their regular mailing addresses, on this _30th_ day of October 2013.

Of Counsel